**UNITED STATES of America, Plaintiff,**

**v.**

**Andrew COLON–MIRANDA (03); Heriberto Ortiz–Santiago (35); Edwin Ortiz–Figueroa (36); David Samuel Martinez–Velez (37); Edwin Rosario–Rodriguez (40); Luis Rosario–Rodriguez (39), Defendants.**

**Criminal No. 95–029 (JAF).**

United States District Court,
D. Puerto Rico.

Oct. 24, 1997.

John M. Katko, Trial Attorney, San Juan, PR, Theresa Van Vliet, Chief, Narcotic & Dangerous Drug Section, Criminal Div., U.S. Dept. of Justice, Washington, DC, for Plaintiff.

Luis Guzman–Dupont, San Juan, PR, for Colon–Miranda.

Wilfredo Rios–Mendez, Caguas, PR, for Ortiz–Santiago.

Jorge Arroyo–Alejandro, San Juan, PR, for Ortiz–Figueroa.

Luis A. Medina-Torres, San Juan, PR, for Martinez-Velez.

Rafael Anglada–Lopez, San Juan, PR, for Edwin Rosario–Rodriguez.

Miriam Ramos-Grateroles, Bayamon, PR, for Luis Rosario-Rodriguez.

### OPINION AND ORDER

FUSTE, District Judge.

The government filed for death penalty certification for this case on June 10, 1997, and withdrew it fifteen days later, after the issue was informally discussed at a status conference on June 23, 1997. The government now attempts to revive its abandoned demarche to certify the case as a death penalty candidate. *See* 18 U.S.C. § 3591; 21 U.S.C. § 848(e); Local Rule 428. On October 16, 1997, we heard the parties' positions on this issue, and announced our inclination to deny the government's request. We now explicate in more detail the reasoning for the present denial of the government's motion.

### I.

The consideration of whether to permit the government to go forward with its proceedings for certification entails the unique gravity appropriate for capital cases. Capital punishment is qualitatively different from any other form of criminal penalty we may impose. *Woodson v. North Carolina,* 428 U.S. 280, 305, 96 S.Ct. 2978, 2991–92, 49 L.Ed.2d 944 (1976). With it, we deny the convict any possibility of rehabilitation and order instead his execution, the most irrevocable of sanctions. *Gregg v. Georgia,* 428 U.S. 153, 187, 96 S.Ct. 2909, 2931–32, 49 L.Ed.2d 859 (1976). Its severity demands a heightened need for reliability in the determination that death is the appropriate punishment in a specific case. *Caldwell v. Mississippi,* 472 U.S. 320, 323, 105 S.Ct. 2633, 2636–37, 86 L.Ed.2d 231 (1985) (citing *Wood-*

*son,* 428 U.S. at 305, 96 S.Ct. at 2991–92). We must be, therefore, particularly sensitive to insure that unique safeguards are in place that comport with the requirements of the Eighth Amendment. *Gregg,* 428 U.S. at 187, 96 S.Ct. at 2931–32.

## II.

█ In this case, prosecutors originally filed a Certificate of Death Penalty Case on June 10, 1997, and then withdrew it after the issue of the death penalty as a potential sanction was discussed at an informal status conference on June 23, 1997. Then, three months later, on September 18, 1997, the United States Department of Justice sent Death Penalty Review Protocol letters to at least five defendants, setting a hearing before the Attorney General's Review Committee for October 29, less than two weeks before the scheduled trial date of November 10, 1997. At this hearing, the Committee will hear arguments in favor of and against the death penalty, and make a recommendation to the Attorney General upon which she will be expected to act at a later date. Although we do not suggest the presence of any bad faith on the part of the government regarding this significant delay, this tardiness raises concerns of fairness and due process that are particularly salient in a capital case. Where the law includes the death penalty as a punishment, the government has every right to seek it, but within the boundaries of constitutional jurisprudence.

The principal factors that render this case's fortnight metamorphosis into a capital case inappropriate are the appointment of learned counsel and the inability to prepare for the Attorney General's hearing and the trial itself. Undergirding our analysis lies the reasonable notice requirement of the government's intention to seek the death penalty.

## III.

Under the Local Rules' capital case counsel requirements formulated under clear statutory mandate, capital cases have specific standards regarding the appointment of defense counsel, and precise requirements as to what must be accomplished by learned counsel to dissuade the Attorney General from seeking the death penalty. These rules are found in 18 U.S.C. § 3005 and 21 U.S.C. § 848(q)(4). Section 3005 of 18 U.S.C., as amended by § 60026 of the 1994 Act, provides:

> [w]hoever is indicted for treason or other capital crime shall be allowed to make his full defense by counsel; and the court before which the defendant is to be tried, or a judge thereof, shall promptly, upon the defendant's request, *assign two such counsel, of whom at least one shall be learned in the law applicable to capital cases . . . .*

18 U.S.C. § 3005 (1994) (emphasis added). Section 848(q)(4) of 21 U.S.C. states:

> Notwithstanding any other provision of law to the contrary, in every criminal action in which a defendant is charged with a crime which may be punishable by death, *a defendant who is or becomes financially unable to obtain adequate representation . . . shall be entitled to the appointment of one or more attorneys.*

21 U.S.C. § 848(q)(4) (emphasis added).

Moreover, all capital cases in the District of Puerto Rico must abide by the provisions of Local Rule 428. As the Department of Justice requires certain administrative protocol to be followed in capital cases, Local Rule 428 necessitates that prosecutors file a Certificate of Death Penalty Case in any case in which the maximum possible penalty is death. Local Rule 428(2)(A). A prosecutor's notice of his intent to seek the death penalty will trigger certain rights regarding the appointment of defense counsel and case management.

Indeed, the appointment of specifically qualified counsel constitutes the greatest block to a fast switch to a death penalty case. Specifically, a second attorney must be appointed to a capital defendant to join local counsel in preparing to make the submission to the Department of Justice. At least one attorney must be learned in the law applicable to capital cases and, when applicable, qualified as required by 21 U.S.C. §§ 848(q)(5) or 848(q)(6). Local Rule 428(3)-

(5). To be eligible for appointment as learned lead counsel, an attorney must:

(A) be a member of this court, or be admitted to practice *pro hac vice* on the basis of his or her qualifications;

(B) have at least five years experience in the field of federal criminal practice;

(C) have prior experience, within the last three years, as defense counsel in the trial of no fewer than three serious and complex felony cases that were tried to completion in federal court, and have prior experience, within the last three years, as defense counsel in a capital case; and

(D) have demonstrated the necessary proficiency and commitment which exemplify the quality of representation appropriate to the defense of capital cases.

As the Commonwealth of Puerto Rico has a constitutional prohibition against the death penalty, 1 L.P.R.A. Const. art. II, § 7, qualified local learned counsel in this field are not available, and federal defendants in Puerto Rico who are facing a possible death sentence must always look to the mainland for qualified legal assistance. The search for appropriate counsel is a protracted and arduous process. Each learned counsel candidate's record and qualifications must be carefully examined. In this court's experience in contemporaneously overseeing another death penalty eligible case, the endeavor takes at least two months. After finding potential qualified counsel, the court must first confirm that local counsel approves, and then appoint such counsel. Needless to say, this endeavor translates into a lengthy process, one that cannot be resolved in the period of a few weeks.

## IV.

The Attorney General's hearing requires many elements of preparation, each of which is time-consuming. Once the defendant is charged with an offense subject to the death penalty, or before the government decides to request approval to seek the death penalty, the government must give defense counsel a "reasonable opportunity to present any facts, including mitigating factors, to the United States Attorney for consideration." January 27, 1995, Memorandum from Janet Reno, ¶ B, *Federal Prosecutions in Which the Death Penalty May Be Sought.* In presenting the case that a sentence of death is not justified, defense counsel must carefully investigate and argue the mitigating factors listed in 18 U.S.C. § 3592 and 21 U.S.C. § 848(m). These factors include, but are not limited to: Impaired capacity; duress; minor participation; equally culpable defendants; prior criminal record; mental or emotional disturbance; victim's consent; grave risk of death to additional persons; heinous, cruel or depraved manner of committing offense; procurement of offense by payment; pecuniary gain; substantial planning and premeditation; vulnerability of the victim; and use of a firearm. 18 U.S.C. §§ 3592(a)—(d); 21 U.S.C. § 848(m).

It is frankly impossible that, in the span of three weeks, an adequate defense could be simultaneously mounted to face both the hearing before the Attorney General and the immediately subsequent trial. Preparation of these various defenses cannot be effectively performed within the few weeks between the September 18 letters and the October 29 hearing in the Attorney General's office. The first time-consuming task is the appointment of qualified counsel learned in the law applicable to capital cases. Once defendant obtains counsel, that counsel will need sufficient lead time to prepare fully. Counsel will need to investigate both the facts of the case that are relevant to guilt and the related set of facts and issues bearing on the defendant's family and personal history. *See* 18 U.S.C. § 3593; 21 U.S.C. §§ 848(j) and (m). Defendant is also likely to raise issues relating to his mental, emotional, and psychological makeup as mitigating factors. This will require defendant to retain and use the services of investigators, mental health experts, and mitigation specialists. Defendant may additionally have to request permission to hire such expert witnesses, and the court will then have to decide whether to approve such requests. Expert psychological evaluations that may be required generally involve a more time-consuming analysis in that they are not as immediately conclusive as a physi-

ological exam or simple blood test. Moreover, the government had plenty of time before this latest request to give notice of its revived intent to seek the death penalty. To grant the government's request here would be tantamount to providing it a continuance, directly employing the court as an arm of the prosecution. Because of all these concerns, we are not sympathetic to the government's sudden change of mind regarding such a serious matter.

Furthermore, highly complex is the government's own preparation for the hearing at which the seeking of the death penalty will be decided. In requesting authorization to seek the death penalty, the government must provide the Attorney General with a

> [c]omprehensive discussion of the expected testimony of all key witnesses (including relationship to each proposed capital defendant and offense), plea agreements of cooperating witnesses, eyewitness identifications, investigative evidence, surveillance, physical evidence, forensics, ballistics, finger-prints, etc.

*See* United States Department of Justice, Memorandum of December 9, 1994, from Joseph S. Uberman, Trial Attorney, *Information and Procedures for Requesting Authorization to Seek the Death Penalty,* and proposed Outlines. Additionally, the government must prepare a "Death Penalty Evaluation" form and a prosecution memorandum including a comprehensive discussion of the facts and evidence, including evidence relating to any aggravating or mitigating factors, the defendant's background and criminal history and the basis for the federal prosecution.

At the informal status conference on June 23, 1997, we scheduled this case for trial on November 10, 1997, without objection. Even though counsel may have received the death penalty letters in late September, until this court addresses the matter of whether and how to appoint learned counsel according to the requirements of a death penalty case, Local Rule 428, the defendants and their attorneys are simply against the wall, in an uncomfortable, rushed procedural scenario that offends traditional notions of fair play,

preventing them from effectively representing their clients.

## V.

Finally, we look at the reasonable notice requirement of 18 U.S.C. § 3593, requiring that in a case involving a possible sentence of death, the government must file a notice, within "a reasonable time" before trial or a guilty plea, that it intends to seek the death penalty.

In the absence of case law interpreting section 3593, we look for guidance in the constitutional jurisprudence surrounding the Sixth Amendment right to a speedy trial. There, we find that the determination of what constitutes "a reasonable time" must balance such factors as: The length of time between the notice of intent to seek the death penalty and the trial or plea; the reason for any delay; the nature of the government's conduct; and the prejudice to defendant from delay. *Barker v. Wingo,* 407 U.S. 514, 528–33, 92 S.Ct. 2182, 2191–94, 33 L.Ed.2d 101 (1972); *United States v. Mala,* 7 F.3d 1058, 1061 (1st Cir.1993), *cert. denied,* 511 U.S. 1086, 114 S.Ct. 1839, 128 L.Ed.2d 466 (1994); *United States v. Daley,* 454 F.2d 505, 508 (1st Cir.1972). These factors do not operate with scientific precision, and must be evaluated on a case-by-case basis "together with such other circumstances as may be relevant." *Mala,* 7 F.3d at 1061 (quoting *Barker,* 407 U.S. at 530, 92 S.Ct. at 2191–92). Moreover, we look unfavorably upon delays which, though unintentional, result from government ambivalence. *United States v. Cabral,* 475 F.2d 715, 718 (1th Cir.1973).

The reasonable notice rule takes further meaning from the requirements of learned counsel and the exigencies of preparing for the evaluation hearing and the trial discussed above. We find that the government did not file its notice of intent to seek the death penalty within a reasonable time before trial given the prejudice that defendants would suffer as a result of the government's vacillation.

We, accordingly, **DENY** the government's request for a continuance based on its intent to pursue death penalty certification.

**IT IS SO ORDERED.**