**UNITED STATES of America, Plaintiff,**

v.

**Andres COLON–MIRANDA (03); David Samuel Martinez–Velez (37); Edwin Rosario–Rodriguez (40), Defendants.**

Criminal No. 95–029 (JAF).

United States District Court,
D. Puerto Rico.

Nov. 13, 1997.

John M. Katko, Trail Atty., San Juan, PR, Thersa Van Vliet, Chief, Narcotic & Dangerous Drug Section, Criminal Division, U.S. Dept. of Justice, Washington, DC, for U.S.

Luis Guzman–Dupont, San Juan, PR, for Colon–Miranda.

Wilfredo Rios–Mendez, Caguas, PR, for Ortiz–Santiago.

Jorge Arroyo–Alejandro, San Juan, PR, for Ortiz–Figueroa.

Luis A. Medina–Torres, Ponce, PR, for Martinez–Velez.

Rafael Anglada–Lopez, Hato Rey, PR, for Edwin Rosario–Rodriguez.

Miriam Ramos–Grateroles, Bayamon, PR, for Luis Rosario–Rodriguez.

### OPINION AND ORDER

FUSTE, District Judge.

The government filed its preliminary notice to seek the death penalty for this case on June 10, 1997, and withdrew it fifteen days later, after the issue was informally discussed at a status conference on June 23, 1997. Three months later, on September 18, 1997, the United States Department of Justice sent Death Penalty Review Protocol letters to at least five defendants, setting a hearing before the Attorney General's Re-view Committee for October 29, less than two weeks before the scheduled trial date of November 10, 1997. The government then moved again to file its preliminary notice to seek the death penalty in the case against at least five of the original defendants. *See* 18 U.S.C. § 3591; 21 U.S.C. § 848(e); Local Rule 428. On October 16, 1997, we heard oral arguments on this issue, and on October 24, 1997, we denied the government's motion.

Since this court's Order of October 24, 1997, denying the government's motion to seek the death penalty in this case, the Attorney General has approved the case for the Department of Justice's Trial Attorney to request the death penalty against defendants Andres Colon–Miranda, David Samuel Martinez–Velez, and Edwin Rosario–Rodriguez. Following the Attorney General's certification for the death penalty, the government filed with this court on November 7, 1997, this certification of the death penalty case against the three above-named defendants.

### I.

■ We again note the gravity with which we must consider the government's motion as "[t]here is no question that death as a punishment is unique in its severity and irrevocability." *Gregg v. Georgia,* 428 U.S. 153, 187, 96 S.Ct. 2909, 2931, 49 L.Ed.2d 859 (1976) (citing *Furman v. Georgia,* 408 U.S. 238, 286–91, 92 S.Ct. 2726, 2750–53, 33 L.Ed.2d 346 (1972) (Brennan, J., concurring); *id.* at 306, 92 S.Ct. at 2760 (Stewart, J. concurring)). The court must be particularly vigilant in a capital case to be sure that every safeguard is observed. *Powell v. State of Ala.,* 287 U.S. 45, 71, 53 S.Ct. 55, 65, 77 L.Ed. 158 (1932).

### II.

The government's certification of this case places this court in an extremely tenuous position: That of having to balance the government's legal right to choose to pursue the death penalty against the stringent due process requirements triggered in a capital case. The court faces several options in considering this motion. We may grant the government's motion and conduct this trial as a

capital case, beginning on the date originally scheduled. Second, we may grant the government's motion and make this a capital case, but order a continuance so that defense counsel may prepare for trial. Third, we could sever the death penalty defendants from the non-capital defendants, and move forward as scheduled in the non-capital case.

## III.

To try this case as a capital one on the scheduled date of November 17, 1997, would violate the most fundamental standards of due process. Our original denial of the government's motion was based on the impossibility of, within the span of just a few weeks, this court's finding and appointing learned counsel, and learned counsel's being able to prepare adequately for trial. 18 U.S.C. § 3005, as amended by Section 60026 of the 1994 Act, provides that the court must assign any person indicted for a capital crime two defense counsel, at least one of whom must be learned in the law applicable to capital cases. *See also* 21 U.S.C. § 848(q)(4). Local Rule 428 of the District of Puerto Rico also requires that a second attorney be appointed to a capital defendant to join local counsel. At least one of those attorneys must be learned in the law applicable to capital cases and, when applicable, qualified as required by 21 U.S.C. § 848(q)(5) or § 848(q)(6). Local Rule 428.

■ We reiterate how difficult and lengthy a process it is to appoint learned counsel in Puerto Rico, as the Commonwealth has a constitutional prohibition against the death penalty, 1 L.P.R.A. Const. art. II, § 7, and qualified local learned counsel in this field are not available. Federal defendants in Puerto Rico facing a possible death sentence must always look to the mainland for qualified legal assistance. Finding appropriate counsel requires a protracted and arduous process. We must carefully examine each learned counsel candidate's record and qualifications. After finding potentially qualified counsel, the court must first confirm that local counsel approves, and then appoint such counsel. Needless to say, this lengthy endeavor cannot be resolved in a few weeks, much less in a few days.

Once appointed, learned counsel must undertake the time-consuming task of trial preparation. Were it possible to wish learned counsel to appear as a genie out of a bottle, he or she could not mount an adequate defense by the November 17 trial date.[1] Counsel must carefully investigate a myriad of facts and legal issues, and will need to examine the specific facts of the case relevant to guilt, as well as the related set of facts and issues bearing on the defendant's family and personal history. *See* 18 U.S.C. § 3593; 21 U.S.C. §§ 848(j) and (m). An effective defense will also call upon counsel to examine all mitigating factors, including defendant's mental, emotional, and psychological makeup, and seek the court's permission to employ the services of investigators, mental health experts, and mitigation specialists.

On October 24, we stated that no defense counsel could possibly complete these tasks within three weeks. We are not dissuaded from that ruling upon further review. As there was insufficient lead time for defense counsel to prepare for trial several weeks ago, we have no doubt that there is inadequate time to prepare only seven days before trial. To require defense counsel even to attempt to undertake this list of duties only one week before trial would be highly offensive to traditional notions of fair play, and effectively prevent the defendant from having any effective representation whatsoever.

## IV.

■ Neither is severance of the trial an intelligent option in this case. The federal system prefers joint trials of defendants who are indicted together, in order to promote efficiency and " 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts,' " *Zafiro v. United States*, 506 U.S. 534, 537, 113 S.Ct. 933, 937, 122 L.Ed.2d 317 (1993) (quoting *Richardson v. Marsh*, 481 U.S. 200, 210, 107 S.Ct. 1702, 1708, 95 L.Ed.2d 176 (1987)), and allowing a more accurate statement of relative culpabili-

---

1. Though originally set for November 10, 1997, the trial date was rescheduled to being on November 17, 1997, due to a scheduling conflict with one of defendant's counsel.

ty. *Richardson,* 481 U.S. at 210, 107 S.Ct. at 1708. Overlapping evidence among defendants' offenses will weigh the balance in favor of a joint trial. *United States v. Sutherland,* 929 F.2d 765, 778 (1st Cir.1991) (drug offenses and tax evasion offenses were properly joined for trial because the likely source of income for which defendant had evaded taxes was drug distribution). Here, defendants participated in the same transaction or series of events constituting an offense. *See* Fed.R.Crim.P. 8(b). In the absence of any prejudice to the defendants by this joinder, this court must follow closely its obligation to promote efficiency and fairness by not severing the defendants unnecessarily.

## V.

It is equally offensive to the notions of due process to grant a continuance at this time. Section 3593 of Title 18 provides that in a case involving a possible sentence of death, the government must file a notice, within "a reasonable time" before trial or a guilty plea, that it intends to seek the death penalty. *See* 18 U.S.C. § 3593. We have previously noted the absence of case law interpreting section 3593, and again look for guidance to the constitutional jurisprudence surrounding the Sixth Amendment right to a speedy trial.

 Jurisprudence instructs that the determination of what constitutes "a reasonable time" before trial must balance such factors as: The length of time between the notice of intent to seek the death penalty and the trial or plea, the reason for any delay, the nature of the government's conduct, and the prejudice to defendant from delay. *Barker v. Wingo,* 407 U.S. 514, 528–33, 92 S.Ct. 2182, 2191–93, 33 L.Ed.2d 101 (1972); *United States v. Mala,* 7 F.3d 1058, 1061 (1st Cir. 1993), *cert. denied,* 511 U.S. 1086, 114 S.Ct. 1839, 128 L.Ed.2d 466 (1994); *United States v. Daley,* 454 F.2d 505, 508 (1st Cir.1972). These factors do not operate with scientific precision, but rather must be evaluated on a case-by-case basis "together with such other circumstances as may be relevant." *Mala,* 7 F.3d at 1061 (quoting *Barker,* 407 U.S. at 530, 92 S.Ct. at 2192).

██ In the case at bar, the length of time between the notice of intent to seek the death penalty and the trial is a mere week. No legitimate or acceptable reason for the government's delay exists. The prejudice defendants would suffer from this tardiness is so overwhelming that it would prevent them from securing any effective defense whatsoever. Furthermore, the First Circuit has specifically stated that it looks unfavorably upon delays which, though unintentional, result from government ambivalence. *United States v. Cabral,* 475 F.2d 715, 718 (1st Cir.1973).

Furthermore, strong public policy considerations fuel our continued denial of the government's motion and our decision to move forward as scheduled. The District of Puerto Rico has been long inundated with gang-related drug cases. This court will not cripple the wheels of justice and contaminate judicial economy because of the government's inability to timely make its motion. Our refusal to continue, therefore, rests upon our concerns for fair play and due process—which are particularly keen when the ultimate sanction is death—and public policy considerations.

## VI.

Federal statutes and Local Rule 428, both of which are borne of due process considerations, prohibit this court from trying this case as a capital case on the scheduled date, only a week away. We will not continue or sever the case. The government has had months to revive its notice to seek the death penalty. We simply cannot postpone this trial for several months to allow defense counsel to prepare for a capital case when this case has been scheduled for months and the government did not bother to announce its actual intention to seek the death penalty until the eleventh hour. Basic due-process principles of speedy trial jurisprudence and judicial economy persuade us not to exercise our discretion to continue or sever the case. Given these circumstances, we have no choice but to reaffirm our October 24 decision denying the government's motion to seek the death penalty.

This trial will, therefore, commence on November 17, 1997, as scheduled. We will not permit the government's confusion, vacillation or strategy to delay unnecessarily this trial or unduly prejudice the defendants.

We, accordingly, **DENY** the government's request to seek the death penalty in this case.

**IT IS SO ORDERED.**