UNITED STATES of America,
Plaintiff,

v.

[1] Hector Oscar ACOSTA MARTINEZ,
[2] Joel Rivera Alejandro,
Defendants.

No. CR. 99–044(SEC).

United States District Court,
D. Puerto Rico.

March 10, 2000.

John R. Teakell, Guillermo Gil, U.S. Attorney's Office District of P.R., Criminal Division, San Juan, PR, Timothy L. Faerber, U.S. Attorney's Office District of P.R., Civil Division, Hato Rey, PR, for plaintiff.

Rafael Anglada–Lopez, San Juan, PR, Rafael F. Castro–Lang, San Juan, PR, Maria T. Arsuaga, Federal Public Defender Office, San Juan, PR, William C. Brennan, Upper Marlboro, MD, Gustavo A. Del–Toro–Bermudez, San Juan, PR, Hector A. Deliz, Deliz & Torres Gonzalez, Hato Rey, PR, Jorge L. Diaz–Reveron, Hato Rey, PR, Ivan Dominguez–Perez, Hato Rey, PR, Cristina Gutierrez, Baltimore, MD, Joseph C. Laws, Federal Public Defender Office, San Juan, PR, William D. Matthewman, Miami, FL, Steve Potolsky, Miami, Fl, Victor A. Ramos–Rodriguez, Carolina, PR, for defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

This is a capital case. As all capital cases in this District, it is governed by Local Rule 428, which in pertinent part provides:

(11) Initial Status Conference and Case Management Schedule

(A) In all identified capital cases, the presiding Judge shall promptly conduct an Initial Status Conference, in order to ensure the effective management of the case, including the appointment of counsel pursuant to this Rule.

(B) Upon the return or unsealing of an Indictment in a capital case, the

(1) Defense may present, within ninety (90) calendar days, to the United States Attorney and the Attorney General, all mitigating factors and factual reasons as to why the death penalty should not be sought.

(2) After the first ninety (90) calendar days have elapsed, the government shall conclude, within the next sixty (60) calendar days, the preparation of its Death Penalty Evaluation (DPE) form and prosecution memorandum to the Attorney General. The government shall append the defendant's memorandum described above to its prosecution memorandum.

(3) If the government intends to seek the death penalty, the United States Attorney shall file a final Notice of Intent to Seek the Death Penalty within thirty (30) calendar days after submission of the Death Penalty Evaluation (DPE) form and prosecution memorandum to the Attorney General.

(C) The aggregate term of one-hundred and eighty (180) calendar days contemplated in Local Rule 428[ (11) ](B)(1)–(3) will not be extended by the Court. The government's failure to file a final Notice of Intent to Seek the Death Penalty within the specified maximum term, will cause the criminal matter to be treated as an ordinary felony case.

(D) None of the above-mentioned terms shall impede the Court from issuing an order at an early status conference requiring the government to file any Notice of Intent to Seek the Death Penalty by a date certain.

This case began with four death eligible defendants, but eventually the Attorney General authorized the United States Attorney for this District to seek such punishment only against two. The Court now addresses a request by these two defendants to declare the death penalty inapplicable due to the government's alleged non-compliance with Local Rule 428. (**Docket # 140**). The government duly opposed.

(Dockets # 141 and # 191). For the reasons set forth below, the Court denies defendants' request. (**Docket # 140**).

**Background**

The initial indictment in this case was filed on February 23, 1999.[1] That indictment charged defendants Héctor Oscar Acosta Martínez, Joel Rivera Alejandro, Carlos Oscar Díaz Díaz, and Andy Vega Maldonado with conspiracy to interfere with interstate commerce by extortion, in violation of 18 U.S.C. § 1951(a) (count one); aiding and abetting in a firearm murder during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(j) and § 2 (count two); and aiding and abetting in the killing of a person in retaliation for providing law enforcement officials with information relating to the possible commission of a federal offense, in violation of 18 U.S.C. § 1513(a)(1)(B) and § 2 (count three).[2] Defendant Rivera Alejandro was additionally charged with knowingly threatening a person with intent to prevent the communication to a United States law enforcement officer of information relating to the possible commission of a federal offense, in violation of 18 U.S.C. § 1512(b)(3) (count five). The indictment further charged defendant Pérez Mojica with conspiracy to interfere with interstate commerce by extortion, in violation of 18 U.S.C. § 1951(a) (count one).[3] (**Dockets # 14 and # 15**).

On April 6, 1999, the Court held the required initial status conference. (**Docket # 50**). At that conference, the "[t]he government informed that it [wa]s studying the possibility of seeking the death penalty as to defendants [Acosta Martínez and Rivera Alejandro]." (**Id.**). Upon this announcement, "[t]he Court stated that it [wa]s of the utmost importance that a reasonable schedule be set and maintained, if this [wa]s going to be a death penalty case,

so there [would] be no undue delay because of the transmittal." (**Id.**). The Court thus "requested the government to confirm its intent, and against which defendants, by April 23, 1999." (**Id.**). Furthermore, defense counsel were instructed to submit to the Court, upon receipt of the information from the government, the names of three attorneys qualified as learned in the law applicable to capital cases. (**Id.**).

On May 13, 1999, the Court held a pretrial conference where the government "informed that it w[ould] file its death penalty memorandum to the Attorney General on or before May 31, 1999." (**Docket # 73**). Regarding the appointment of learned counsel, "[t]he Court determined that in light of the current budget situation, and in order to economize on judicial resources, it w[ould] not name learned counsel, but w[ould] do so, if and when the government modifie[d] its final decision regarding its request for ... [the] death penalty." (**Id.**). In light of such determination, "the Court gave the government until August 24, 1999[,] to notify ... its request for [the] death penalty ... in this case." (**Id.**). Finally, the government informed that it anticipated filing a superseding indictment. (**Id.**).

On June 2, 1999, as announced, the government filed a superseding indictment charging two new defendants, to wit: Ortiz Montalvo and Reyes Escribano. (**Docket # 83**). The charges pertaining to the other defendants remained unaltered. On July 16, 1999, another status conference was held. On that occasion, the Court informed that in light of the superseding indictment, it would "review again the issue of naming learned counsel." (**Docket # 105**). For this purpose, the Court requested from counsel at least two recommendations of qualified counsel. More-

---

1. It was returned on February 23, 1999. (**Docket # 14**).

2. The offenses charged in counts two and three are punishable by death.

3. Defendant Pérez Mojica subsequently moved for a change of plea. (**Docket # 69**).

over, the Court set aside the August 24 deadline for the government to notify its intent to seek the death penalty. "The Court further asked the government, with the consent and agreement of all defense counsel, to leave the [death penalty] certification process in abeyance in order to allow the Court to make a final decision on the appointment of learned counsel and to make feasible, if the Court so decide[d], their participation in that process in the mitigation stage."[4] **(Id.).**

On July 19, 1999, the United States Attorney for this District sent letters to counsel for the death eligible defendants, for the purpose of providing counsel with the opportunity to submit in writing "any reasons why the death penalty should not be sought." **(Docket # 109, Attachment).** The letter asked that such written submission be made by August 4, 1999, and announced that the Attorney General's Review Committee would meet on August 9, 1999.[5] **(Id.).** In response to this letter, defendant Díaz Díaz filed a motion to enjoin the prosecution from further considering this as a death penalty case until the Court's July 16 order and Local Rule 428 were complied with, and again reiterated the necessity of appointing learned counsel. **(Docket # 109).** In that motion, defendant's counsel again raised the issue, premised on the decision in *United States v. Peña–González*, 62 F.Supp.2d 358 (D.P.R.1999), of whether failure to appoint learned counsel for death penalty certification proceedings violates a death eligible defendant's due process, as well as Local Rule 428. **(Docket # 109, at ¶ 1).**[6]

On August 11, 1999, another status conference was held. "After considering that a superseding indictment including two additional defendants ha[d] been filed, and after further considering ... [the] probability that the government w[ould] be requesting the death penalty against four of the defendants, the Court found that, in all fairness, learned counsel should be appointed, as defense counsel had requested." **(Docket # 124).** The Court then made such appointments. "Furthermore, the Court determined that Local Rule 428 would commence to apply as of August 10, 1999, **in order to allow for its adequate implementation, and for the purpose of giving learned counsel the opportunity to participate in [Department of Justice] process [, and] ... giving the government** time to proceed as required." **(Docket # 127)** (emphasis added). A further status conference was set for August 25, 1999. **(Id.).**

At the August 25 status conference, learned counsel for defendant Rivera Alejandro "expressed his opinion that the Court may not have the authority to extend the 180–day period established in Local Rule 428, and that this term had already expired. Thus, [counsel] argued [that] the government may be impeded from seeking the death penalty against the defendants." **(Docket # 131, at ¶ 9).** This motion followed.

Since then, the Attorney General authorized the prosecution to seek the death penalty against defendants Acosta Martínez and Rivera Alejandro, but not

---

4. Defendant Rivera Alejandro protests that since his attorney was excused from that status conference, the latter cannot be deemed to have consented to the setting aside of the deadline for the government to file its notice of intent to seek the death penalty, nor to have been part of the agreement to hold the certification process in abeyance. However, defendant's counsel was notified with a copy of the minutes of the conference and did not thereafter object to any of these actions. More importantly, defendant's attorney was present at the subsequent conference held on August 25, 1999, where the Court ordered

that the 180–day time period of Rule 428 commence to run anew, and did not voice any objection.

5. However, on August 6, 1999, the government informed that the Review Committee's meeting scheduled for August 9, 1999, had been canceled. **(Docket # 119).**

6. Counsel had previously raised this issue at the July 16 conference, although the minutes do not reflect so.

against Díaz Díaz and Vega Maldonado. Following this authorization, on January 25, 2000, the government filed its notice of intent to seek the death penalty against defendants Acosta Martínez and Rivera Alejandro. (**Docket # 221**). Because authorization to seek the death penalty was granted only as to defendants Acosta Martínez and Rivera Alejandro, this motion applies only to them.[7]

It is worth noting, at the outset, that the Court undertakes the evaluation of defendants' arguments "with extreme care in light of the gravity of the case, mindful that '[t]here is no question that death as punishment is unique in its severity and irrevocability.'" *United States v. Valle-Lassalle*, 36 F.Supp.2d 445, 446 (D.P.R. 1999).

### Applicable Law/Analysis

■ Local rules, once properly promulgated, "carry the force of law." *Air Line Pilots Ass'n v. Precision Valley Aviation, Inc.*, 26 F.3d 220, 224 (1st Cir.1994) (citation omitted). A district court enjoys great, albeit not unbridled, leeway in the application and enforcement of its local rules, *see Ramsdell v. Bowles*, 64 F.3d 5, 7 (1st Cir.1995); *Air Line Pilots Ass'n*, 26 F.3d at 224; *United States v. Díaz-Villafañe*, 874 F.2d 43, 46 (1st Cir.1989), *cert. denied* 493 U.S. 862, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989), and has "the authority to interpret ... [them] in nontechnical ways and to avoid [nonsensical] results." *City of Waltham v. United States Postal Service*, 11 F.3d 235, 243 (1st Cir.1993). "A district court's plausible construction of its own local rules is entitled to considerable deference." *Air Line Pilots Ass'n*, 26 F.3d at 225.

■ Local Rule 428 establishes an aggregate term of 180 days for the initial management of a capital case. Within the first 90 days following the indictment, defense counsel may present all mitigating factors and factual reasons as to why the death penalty should not be sought. Within 60 days thereafter, the government must prepare its death penalty evaluation form and prosecution memorandum. Finally, the government must file its notice of intent to seek the death penalty within 30 days after submitting its death penalty evaluation form and prosecution memorandum. P.R.Loc.R. 428(11)(B)(1)–(3). Compliance with these terms is to be "strictly enforced," *id.* (B), and the government's failure to file the notice of intent to seek the death penalty within the prescribed period will cause the case "to be treated as an ordinary felony case." *Id.* (C). The aggregate 180–day term, moreover, "will not be extended by the Court." *Id.*

Local Rule 105, however, authorizes the Court to "suspend or modify the requirements or provisions of any of [the Local] Rules in a[ny] particular case by written order." P.R.Loc.R. 105. The rule provides, moreover, that "[w]hen a Judge of this Court issues any order in a specific case which is not consistent with [the Local Rules], such order shall constitute a suspension of the[ ] Rules for such case...." *Id.*

■ Defendants contend that because the government did not file its notice of intent to seek the death penalty within the 180–day term, it is now impeded from seeking such punishment in this case. They argue, moreover, that Rule 105 is in conflict with Rule 428 and is, therefore, inapplicable to the instant case. According to defendants, "[t]he provisions in Rule 428 that the time periods will be 'strictly enforced' and that the maximum term [of 180 days] 'will not be extended by the Court' would be meaningless unless viewed

---

7.  The motion was initially filed by defendants Rivera Alejandro and Díaz Díaz (**Docket # 140**), and later adopted by defendant Vega Maldonado (**Dockets # 172, # 173 and # 174**). While the record does not reflect that defendant Acosta Martínez ever adopted the same, it is the Court's recollection, and it has indeed proceeded under the impression, that his counsel had done so. Accordingly, the Court will deem the instant motion also applicable to defendant Acosta Martínez.

as a later enacted, specific exception to the earlier, general empowerment of Rule 105 to suspend the Rules whenever the Court deems it appropriate." (**Docket # 140, at ¶ 26**).

Purportedly, the plain language of Rule 428(11)(C) lends support to defendant's contention. *See* P.R.Loc.R. 428(11)(C). However, were it the drafters' intent to except Rule 428 from the provisions set forth in Rule 105, they could have clearly stated it. "It has been held that exceptions are not to be implied. An exception cannot be created by construction." Norman J. Singer, *Sutherland Statutes and Statutory Construction* § 47.11, at 165 (5th ed.1992). Yet it is true that "if an absurd result is reached by a literal construction of a statute, an exception is presumed to have been intended." *Id.* Contrary to defendants' argument, subjecting Rule 428 to the suspension provisions of Rule 105 does not create such a result. In meritorious (or complex) cases governed by Rule 428, Rule 105 serves a useful and just purpose. This is one of such cases. We explain why.

Section 3593 of Title 18 of the United States Code requires the government to file its notice of intent to seek the death penalty within a "reasonable time" before trial. *See* 18 U.S.C. § 3593(a). To implement this requirement, this Court promulgated Rule 428, and established the familiar 180–day aggregate term for the government to file its notice of intent to seek the death penalty. Both § 3593 and Local Rule 428 "are borne of due process considerations." *United States v. Colón–Miranda*, 985 F.Supp. 36, 39 (D.P.R.1997) (hereinafter *"Colón–Miranda II"*). The purpose of Rule 428 is twofold: (1) to afford an indigent death eligible defendant the right to counsel whose qualifications parallel the gravity of a death penalty case, and (2) to avoid prejudice upon a death eligible defendant because of the government's delay in announcing its in-

tention to seek the death penalty. The rule seeks particularly to prevent a death eligible defendant from being put "against the wall, in an uncomfortable, rushed procedural scenario that offends traditional notions of fair play," impeded from preparing an effective and adequate defense, due to the prosecution's untimeliness or vacillation in notifying its intent to seek the death penalty. *Cf. United States v. Colón–Miranda*, 985 F.Supp. 31, 35 (D.P.R.1997) (hereinafter *"Colón–Miranda I"*) (denying government's request for continuance to pursue death penalty in light of its vacillation in filing notice).

Yet it is one thing preventing the government from filing its notice of intent to seek the death penalty beyond the 180–day period because of ambivalence or lack of diligent prosecution, and another allowing for a new computation of the 180–day term in order to give a death eligible defendant the opportunity to be appointed counsel learned in the law of capital cases, who may properly assist in preparing an effective and adequate defense. In the former situation, Local Rule 428 sanctions the government's conduct by preventing it from pursuing the death penalty and causing the matter to be treated as an ordinary felony. *See* P.R.Loc.R. 428(c). This sanction is appropriate considering the prejudice that the defendant is likely to suffer as a consequence of the government's conduct. In the latter situation, however, the defendant faces no prejudice. To the contrary, computing the 180–day anew once learned counsel has been appointed affords a death eligible defendant the opportunity to obtain expert assistance in the preparation of his or her defense, including the presentation of any mitigating factors to the Attorney General for consideration at the death penalty certification proceedings. It is the alternative what would be prejudicial. The Court could determine that appointing learned counsel would halt the 180–day term [8] consequently precluding

---

8. *See United States v. Colón–Miranda*, 985 F.Supp. 36, 38 (D.P.R.1997) (noting "how difficult and lengthy a process it is to appoint learned counsel in Puerto Rico").

the government from pursuing the death penalty, and simply opt to let the defendant face the certification proceedings either alone or with only the assistance of counsel not learned in the law applicable to capital cases.

In this case, when the Court ordered at the status conference held on August 11 that the Rule 428 timetable begin to run anew as of August 10, **(Docket # 124)**, two judges in this District had recently issued purportedly conflicting opinions regarding the right to counsel during death certification proceedings before the Attorney General's Review Committee. On July 7, 1999, Judge Fuste in *United States v. Peña–González*, 62 F.Supp.2d 358 (D.P.R. 1999) held that a death penalty certification hearing is a " 'critical' stage in a criminal proceeding where the 'substantial rights of a criminal accused may be affected,' " and at which the right to counsel, therefore, attaches.[9]  *Id.* at 363. After concluding that the defendant had been denied this constitutional right, Judge Fusté struck the death penalty certification in that case. Nearly a month later, on August 3, 1999, Judge Pérez–Giménez in *United States v. Torres Gómez*, 62 F.Supp.2d 402 (D.P.R.1999) held that the fact that the defendant was not represented by *learned* counsel during the certification hearing before the Attorney General's Review Committee did not affect "in any way the fairness of [the] defendant's future trial." *Id.* at 405. Moreover, Judge Pérez–Giménez characterized Judge Fusté's holding in Peña–González as "mistaken" explaining that the administrative certification hearing is neither a critical stage

nor one affecting the substantial rights of a criminal defendant. *Id.* at 406.

In this context, the Court considered it appropriate, as a question of fairness, and in abundance of caution, to appoint learned counsel to the death eligible defendants in this case as requested.[10]  **(Docket # 124)**. The Court thus ordered that the Rule 428 timetable begin to run anew **"in order to allow for its adequate implementation, and for the purpose of giving learned counsel the opportunity to participate in [Department of Justice] process [, and]** ... giving the government time to proceed as required." **(Id.)** (emphasis added). Such order, as per the second sentence of Rule 105, "constitute[d] a suspension" of Rule 428 for this case, *see* P.R.Loc.R. 105, and it was premised, consistent with Rule 428, on due process considerations. It was intended to give defendants the benefit of having counsel learned in the law applicable to capital cases assist in their defense, and in preparing for the certification hearing before the Department of Justice.[11] This is not a case where the government was ambivalent in its intent to seek the death penalty,[12] or lagged its feet waiting until the eleventh hour to announce it. In this case, the government was ready to go forward with the death penalty protocol and proceed before the Attorney General's Review Committee. It was pursuant to defendants' request for appointment of learned counsel, and under the meritorious circumstances then obtaining, that the Court suspended the 180–day period set forth in Rule 428(11)(B), and ordered it to run anew.

***

9.  Judge Fusté, however, specifically refrained from addressing the issue of whether a defendant at the certification hearing has the right not just to counsel, but to *learned* counsel. *See United States v. Peña–González*, 62 F.Supp.2d 358, 361 n. 2 (D.P.R.1999).

10.  The Court also took into consideration that a superseding indictment had been filed.

11.  This may have indeed benefitted at least the two defendants as to whom the Attorney General did not authorize the prosecution to

seek the death penalty. Of course, this should not be construed as a negative reflection upon the other two defendants' legal representation before the Review Committee.

12.  *See United States v. Colón–Miranda*, 985 F.Supp. 31, 35 (D.P.R.1997) (finding prejudice to defendants from government's vacillation in filing notice of intent to seek the death penalty within reasonable time before trial); *United States v. Colón–Miranda*, 985 F.Supp. 36 (D.P.R.1997) (same).

In equity, moreover, defendants should now be estopped from claiming prejudice because of the new computation of the 180–day term, because such action was taken by the Court primarily at their request.

For the foregoing reasons, the Court hereby **DENIES** defendants' "Motion to Declare the Death Penalty Inapplicable Based Upon Noncompliance with Local Rule 428" (**Docket # 140**).

**SO ORDERED.**