# United States Court of Appeals
## For the First Circuit

No. 19-1441

UNITED STATES OF AMERICA,

Appellee,

v.

JUAN R. PEDRÓ-VIDAL,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, Chief U.S. District Judge]

Before

Howard, Chief Judge,
Kayatta, Circuit Judge,
and Casper,[*] District Judge.

Steven Potolsky, Lead Counsel, with whom Eric Alexander Vos, Federal Public Defender, Vivianne M. Marrero-Torres, Supervisor, Assistant Federal Public Defender, and Liza L. Rosado-Rodríguez, Research and Writing Specialist, were on brief, for appellant.
    José R. Olmo-Rodríguez on brief for Sociedad Para La Asistencia Legal, amicus curiae.
    Jonathan L. Gottfried, Assistant United States Attorney, with whom W. Stephen Muldrow, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Gregory B. Conner, Assistant United States Attorney, were on brief, for appellee.

March 10, 2021

---

[*] Of the District of Massachusetts, sitting by designation.

**HOWARD**, **Chief Judge**. The Local Rules for the United States District Court for the District of Puerto Rico require the federal government to file a notice of intent to seek the death penalty ("Death Notice") within 180 days of an indictment containing a death-eligible offense if the government seeks that penalty. A federal grand jury in Puerto Rico returned an indictment against Juan R. Pedró-Vidal containing death-eligible offenses, but the government did not file a Death Notice until after the 180-day period had expired. Pedró-Vidal moved to strike the Death Notice, arguing that the government violated the Local Rules and, separately, that the Federal Death Penalty Act ("FDPA") should not apply to residents of Puerto Rico. The district court denied the motion and he appealed. Finding no error in the district court's decision, we affirm.[1]

## I. Background

On December 14, 2016, a federal grand jury in Puerto Rico returned a five-count indictment charging Pedró-Vidal with three offenses punishable by death. A few days later, on December 19, the district court identified this matter as a potential capital case and ordered Pedró-Vidal to select learned counsel qualified to handle "the complex, demanding, and protracted nature

---

[1] We acknowledge and thank amicus curiae, Sociedad Para La Asistencia Legal, Inc., for its helpful submission in this matter.

of death penalty proceedings." See D.P.R. Crim. R. 144A(c). He complied, and the district court approved and appointed his selection on December 27. In the following months, the government filed a superseding indictment adding co-defendants but not altering the death-eligible offenses, followed by a second superseding indictment alleging special findings under 18 U.S.C. §§ 3591-92 as to Pedró-Vidal and one of his co-defendants.

The district court held a series of status conferences during which the parties discussed the progression of the Department of Justice's death penalty protocol, including whether, and when, the Attorney General would certify the death penalty in this case. During that time, Pedró-Vidal made several pre-authorization discovery requests related to his upcoming meeting with the Attorney General's Capital Review Committee (the "committee"). During a July 11, 2017 status conference, the government informed the district court that the parties were scheduled to appear before the committee on September 21, 2017. Pedró-Vidal expressed concerns about the timing of the committee hearing, noting that he wanted more time to prepare.

The parties conferred and eventually made their presentations before the Attorney General's committee on October 23, 2017 -- more than 180 days after the indictment. On June 28, 2018, the Attorney General certified the death penalty as to Pedró-

Vidal, and the government filed its notice of intent to seek the death penalty that same day.

On October 9, 2018, Pedró-Vidal filed a motion to strike the death penalty, asserting that the government violated District of Puerto Rico Local Criminal Rule 144A by, among other things, not filing the Death Notice within 180 days of the indictment, and that the application of the FDPA to Puerto Rican residents violated substantive due process and the democratic principle of "consent of the governed."

The district court denied the motion in two separate orders. Addressing Pedró-Vidal's Local Criminal Rule 144A argument, it found that while the government admitted its failure to comply with the Local Criminal Rule, the district court had identified the matter as a death penalty case and appointed learned counsel soon after the grand jury returned the original indictment, thereby satisfying the purpose of the Local Criminal Rule. Consequently, the untimely filed Death Notice did not prejudice Pedró-Vidal because he had the benefit of "counsel, as well as a defense team of experts and mitigation specialists with more than adequate time to prepare for a hearing before the [committee]."

The district court heard oral argument on the applicability of the federal death penalty to residents of Puerto Rico, and then issued a separate order denying Pedró-Vidal's motion

to strike on this point.  The district court found that the "political disenfranchisement of United States citizens in Puerto Rico in no way precludes the Unite[d] States from enacting and executing criminal laws that apply to all citizens of this Nation alike."  United States v. Pedró-Vidal, 371 F. Supp.3d 57, 59-60 (D.P.R. 2019).

Pedró-Vidal now appeals, and requests that we vacate the district court's orders denying his motion to strike the Death Notice and remand for an evidentiary hearing.  For the following reasons, we reject his request and affirm the district court's orders.

## II. Appellate Jurisdiction

Generally, federal courts of appeals may only review final decisions of the district courts.  28 U.S.C. § 1291.  The collateral order doctrine provides a limited exception to that rule.  See Sell v. United States, 539 U.S. 166, 176 (2003). Under the collateral order doctrine, this Court may entertain an appeal from non-final decisions when the order "(1) 'conclusively determines the disputed question,' (2) 'resolves an important issue completely separate from the merits of the action,' and (3) is 'effectively unreviewable on appeal from a final judgment.'" Id. (alterations omitted) (quoting Coopers & Lybrand v. Livesay,

-5-

437 U.S. 463, 468 (1978)). The parties contest whether the district court's orders fall within this exception.

Three other circuit courts have examined whether a denial of a motion to strike an untimely Death Notice is appealable under the collateral order doctrine.[2] The Fourth and Eleventh Circuits concluded that such orders satisfy the collateral order doctrine because a defendant can only vindicate their purported right to not face a capital trial absent adequate notice through interlocutory appeal. United States v. Ferebe, 332 F.3d 722, 729-30 (4th Cir. 2003); United States v. Wilk, 452 F.3d 1208, 1220 (11th Cir. 2006). The Second Circuit disagreed, explaining that § 3593(a) did not create a right not to be tried absent adequate notice, and that the Death Notice procedure more closely resembles other pre-trial rights which are not subject to interlocutory review under the collateral order doctrine. United States v. Robinson, 473 F.3d 487, 491-92 (2d Cir. 2007).

We have not previously addressed this issue, and we need not do so here. The long-standing rule in this circuit is that

---

[2] These decisions considered the timeliness of a Death Notice under 18 U.S.C. § 3593(a), which outlines the general notice requirements in federal capital cases. Pursuant to section 3593(a), if "the government believes that the circumstances of the offense are such that a sentence of death is justified" the government shall file a Death Notice within "a reasonable time before the trial." 18 U.S.C. § 3593(a).

"bypassing jurisdictional questions to consider the merits is appropriate where, as here, the jurisdictional question is statutory" and does not arise under Article III of the federal constitution. Sinapi v. R.I. Bd. of Bar Exam'rs, 910 F.3d 544, 550 (1st Cir. 2018); see Restoration Pres. Masonry, Inc. v. Grove Eur. Ltd., 325 F.3d 54, 59-60 (1st Cir. 2003) (collecting cases). Applying that rule here, we bypass the statutory jurisdiction question and review the appeal on the merits. See United States v. Ayala-López, 457 F.3d 107, 108 (1st Cir. 2006).[3]

### III. Analysis

When a party challenges a district court's decision on a motion to strike a Death Notice, we "review conclusions of law de novo, factual findings for clear error, and the ultimate ruling for abuse of discretion." United States v. López-Matías, 522 F.3d 150, 153 (1st Cir. 2008).

### A. Violation of Local Criminal Rule 144A

The Local Rules for the United States District Court for the District of Puerto Rico require the government, in capital

---

[3] Pedró-Vidal also argues that we should invoke mandamus jurisdiction. Because he made this argument for the first time in his reply brief, it is waived. United States v. Rivera-Carrasquillo, 933 F.3d 33, 40 n.7 (1st Cir. 2019) ("[A]n appellant waives any argument not made in his 'opening brief but raised only in [his] reply brief.'" (second alteration in original) (quoting Lawless v. Steward Health Care Sys., LLC, 894 F.3d 9, 25 (1st Cir. 2018))).

cases, to file a Death Notice within 180 days of the indictment. D.P.R. Crim. R. 144A(k). During the first ninety days, defense counsel may make a presentation before the Attorney General's committee as to whether the death penalty is appropriate in a given case. Id. at (k)(2)(i). If the Attorney General certifies the death penalty, the government must file a Death Notice. Id. at (k)(2)(iii). Although the Local Criminal Rules note that these procedures are to "be strictly enforced," id. at (k)(2), the rules in force at the time also explicitly provided the district court with considerable discretion, allowing it to extend the 180-day period and permitting it to convert a potential capital case into an ordinary felony case upon an untimely filed Death Notice. Id. at (k)(3). These Local Rules carry the force of law. See Schiffmann v. United States, 811 F.3d 519, 525 (1st Cir. 2016).

Local Criminal Rule 144A did not come without guidance. The United States District Court for the District of Puerto Rico has explained that Local Criminal Rule 428 (now Local Criminal Rule 144A) was "borne of due process considerations" and serves two purposes: "(1) to afford an indigent death eligible defendant the right to counsel whose qualifications parallel the gravity of a death penalty case, and (2) to avoid prejudice upon a death eligible defendant because of the government's delay in announcing its intention to seek the death penalty." United States v. Acosta-

-8-

Martínez, 89 F. Supp. 2d 173, 178 (D.P.R. 2000). In crafting the rule, the district court sought "to prevent a death eligible defendant from being put 'against the wall, in an uncomfortable, rushed procedural scenario that offends traditional notions of fair play,' impeded from preparing an effective and adequate defense, due to the prosecution's untimeliness or vacillation in notifying its intent to seek the death penalty." Id. (quoting United States v. Colon-Miranda, 985 F. Supp. 31, 35 (D.P.R. 1997)).

A violation of this Local Criminal Rule, without more, does not compel the striking of a Death Notice. We have, on several occasions, explained that the striking of a Death Notice is akin to dismissing significant portions of an indictment. See United States v. Acosta-Martínez, 252 F.3d 13, 16-17 (1st Cir. 2001); López-Matías, 522 F.3d at 154 n.9. While acknowledging the imprecision of the analogy, we explained that just as "a district court [cannot] dismiss an indictment for errors that involved no prejudice[,] [s]o it must be as well with the striking of the [Death] Notice." López-Matías, 522 F.3d at 154 (citing Bank of Nova Scotia v. United States, 487 U.S. 250, 263 (1988)).

Here, the district court did not abuse its discretion by denying Pedró-Vidal's motion to strike the Death Notice or doing so without an evidentiary hearing. Appellant could not make a showing of prejudice, as required by López-Matías, and an

evidentiary hearing was unnecessary. Id. At the outset, the record established that a large portion of the delay in the certification process stemmed from defense counsel's preparation for the Attorney General's committee hearing. Indeed, not only did Pedró-Vidal make, as was his right, several pre-authorization discovery requests in May and July 2017, but he also sought more time to prepare his presentation before the Attorney General's committee, ultimately delaying the committee hearing beyond the 180-day period, to October 23, 2017. Cf. United States v. Apicelli, 839 F.3d 75, 85-86 (1st Cir. 2016) (finding no prejudice, in the speedy trial context, where much of the delay was due to defense counsel's motion practice).

Further, the district court took steps that simultaneously guarded against any potential prejudice and fulfilled the stated purposes of the Local Criminal Rule. See López-Matías, 522 F.3d at 157 (finding no prejudice where district court achieved the purpose of Local Criminal Rule 144A's Certificate requirement through the early appointment of learned counsel). The district court informed Pedró-Vidal at his initial appearance that the charged offenses were eligible for the death penalty and then promptly appointed learned counsel. Pedró-Vidal's learned counsel was provided adequate notice of the meeting before the Attorney General's committee, where counsel represented

-10-

him.  Learned counsel continued representing Pedró-Vidal and had the entirety of the period between the committee hearing and the filing of the Death Notice to prepare Pedró-Vidal's case.  Pedró-Vidal can hardly argue that the delayed Death Notice offended traditional notions of fair play or that the delay put him "against the wall."  Acosta-Martínez, 89 F. Supp. 2d at 178.[4]  Accordingly, the district court properly denied Pedró-Vidal's motion to strike without an evidentiary hearing.

## B. Applicability of the FDPA to Residents of Puerto Rico

Pedró-Vidal also asserts that the application of the FDPA to residents of Puerto Rico violates substantive due process and the principle of "consent of the governed."  His claim fails because we previously addressed and rejected these same arguments in our decision in Acosta-Martínez, 252 F.3d at 21.  Subject to narrow exceptions not present here, "newly constituted panels in a multi-panel circuit court are bound by prior panel decisions that are closely on point."  United States v. Wurie, 867 F.3d 28,

---

[4] Pedró-Vidal's related argument, that the anxiety he suffered as a result of the delay is an alternative ground for striking the Death Notice, also fails.  He relies on the balancing test from Barker v. Wingo, 407 U.S. 514, 532 (1972), which is most relevant to the speedy trial context and is incongruous with the stated purposes of Local Criminal Rule 144A.  Further, assuming that he suffered the requisite anxiety and concern, the other Barker factors -- preventing oppressive pretrial incarceration and limiting the possibility of his defense being impaired -- do not favor him.  Id.

34 (1st Cir. 2017) (quoting San Juan Cable LLC v. P.R. Tel. Co., 612 F.3d 25, 33 (1st Cir. 2010)). Since Pedró-Vidal merely reiterates the same arguments we rejected in Acosta-Martínez, we are bound to conclude that the district court correctly found that the FDPA is applicable to defendants residing in Puerto Rico.[5]

## Conclusion

For the foregoing reasons, we affirm the district court's orders denying Pedró-Vidal's motions to strike the Death Notice.

---

[5] Pedró-Vidal argues that the FDPA violates the Equal Protection Clause but only referenced the argument in one of the brief's headings. This argument is therefore waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). He also argues that the imposition of the death penalty in Puerto Rico violates the International Covenant on Civil and Political Rights ("ICCPR"). This argument necessarily fails, however, because the Supreme Court has explained that the ICCPR "does not of its own force impose obligations as a matter of international law . . . [that are] enforceable in the federal courts." Sosa v. Álvarez-Machain, 542 U.S. 692, 734-35 (2004).

-12-