IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 92-7006

---

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

JOHN FRED WOOLARD and
DEMPSEY A. BRUNER,

Defendants-Appellees.

---

Appeal from the United States District Court
for the Southern District of Mississippi

---

( January 11, 1993 )

Before WILLIAMS, HIGGINBOTHAM, and BARKSDALE, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

On October 9, 1991 Woolard and Bruner were indicted in the Southern District of Mississippi for the murder of Robert L. McGhee, an officer of the National Park Service "with malice aforethought, premeditation," and during the commission of an escape, contrary to 18 U.S.C. §§ 1111, 1114 and 2. When the prosecution gave required notice of intent to seek the death penalty, defendants moved to strike the death penalty as a possible sentence contending that the federal capital sentencing provision, § 1111, was unconstitutional. The district court granted the motion and the government has appealed, and alternatively, should we find a lack of jurisdiction, petitioned for a writ of mandamus.

It is not certain that we have jurisdiction to review the order striking death as a permissible punishment. Defendants urge that we do not. They deny that the order is reviewable under 18 U.S.C. § 3731[1] or under the "collateral order" doctrine. Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541 (1949).

In enacting § 3731 Congress "intended to remove all statutory barriers to Government appeals and to allow appeals whenever the Constitution would permit," United States v. Wilson, 420 U.S. 332, 337 (1975), and by its terms it is to be "liberally construed to effectuate its purposes." 18 U.S.C. § 3731; see also United States v. Aslam, 936 F.2d 751, 754 (2d Cir. 1991) (§ 3731 is illustrative not exclusive); United States v. Edmonson, 792 F.2d 1492, 1496 (9th Cir. 1986) (same). Circuit courts have found jurisdiction to review orders dismissing a count of an indictment and orders that did not dismiss an entire count but altered it in a significant way from the grand jury's charge. For example, the Ninth Circuit found jurisdiction to review an order striking forfeiture allegations from a RICO indictment in United States v. Marubeni America Corp., 611 F.2d 763, 764-765 (9th Cir. 1980), and the First Circuit

---

[1]Section 3731 provides:

> In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information or granting a new trial after verdict of judgment, as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution. . . .

reviewed a pretrial order striking a predicate act from a RICO count.  United States v. Levasseur, 846 F.2d 786, 788 (1st Cir.), cert. denied, 488 U.S. 894 (1988).  There is little question but that the district court's ruling was in every practical way as much of an alteration from the grand jury's charge as the striking of predicate acts and forfeiture allegations.  The district court effectively removed a discrete basis of criminal liability.  See United States v. Tom, 787 F.2d 65 (2d Cir. 1986) (allowing the government to appeal under § 3731 where the district court took action having the practical effect of dismissal).  We are persuaded that we have jurisdiction under 18 U.S.C. § 3731, and we need not consider the collateral order issues or mandamus.

                                II

     With a creative and bold new approach the government has changed its own mind about the availability of the death penalty in federal court without additional aid of Congress, see Memorandum Opinion for the Associate Attorney General, 5 OP. O.L.C. 222 (1981), and confronts this court's ruling that 18 U.S.C. § 1111 could not support a death sentence under Furman v. Georgia, 408 U.S. 238 (1972).  See United States v. Kaiser, 545 F.2d 467 (5th Cir. 1977).

     The government first attempts to bring its position within the three distinct requirements of Furman.  See, e.g., Blystone v. Pennsylvania, 494 U.S. 299, 308-09 (1990); McCleskey v. Kemp, 481 U.S. 279, 305-06 (1987).  First, the sanction of death must be proportionate to the crime.  Second, the scheme must "genuinely

3

narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder."  Zant v. Stephens, 462 U.S. 862, 877 (1983).  Third, the sentencing judge or jury must be allowed to consider all evidence that tends to mitigate moral culpability and militate against a sentence of death.  Penry v. Lynaugh, 492 U.S. 302 (1989).

Death is a lawful punishment for intentional homicide.  See Tison v. Arizona, 481 U.S. 137, 157-58 (1987).  Defendants are charged with intentionally killing the park ranger.  The second and third requirements of Furman are more problematic.

The government contends that §§ 1111 and 1114 in combination narrow the class of defendants eligible for the death penalty as required by Furman although both were enacted before Furman was decided.[2]  Under § 1114, before a death sentence can be imposed the

---

[2]Section 1114 provides:

Whoever kills or attempts to kill . . . any officer or employee of the National Park Service . . . engaged in or on account of the performance of his official duties . . . shall be punished as provided for under sections 1111 and 1112 of this title . . .

Section 1111 provides:

(a) Murder is the unlawful killing of a human being with malice aforethought.  Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of . . . escape . . . is murder in the first degree.

(b) Within the special maritime and territorial jurisdiction of the United States,

Whoever is guilty of murder in the first degree, shall

4

jury must find that defendants killed "an officer or employee of the National Park Service . . . engaged in or on account of the performance of his official duties." 18 U.S.C. § 1114. The government urges that the jury's discretion is thus limited by Congress and focused upon the circumstances of the crime itself. Defendants reply that Congress's intent in passing § 1114 was only to extend federal jurisdiction to murders of federal officers, and even if narrowed, the statute leaves "a host of difficult substantive and procedural issues." The district judge is left to decide such issues as who has the burden of proof in the sentencing phase, whether the jury should be instructed to weigh aggravating evidence against mitigating evidence in order to arrive at a sentence of life or death, whether jury findings of mitigation preclude imposition of the death penalty, and other components of a sentencing hearing. These requisites of a sentencing hearing in capital cases, defendants argue, cannot be supplied by judicial fiat.

### III

The Court in United States v. Feola, 420 U.S. 671, 679 (1975), rejected arguments that the government must prove that the defendant knew that his victim was a federal officer, concluding that official status was not an element of the crime but was rather the federal jurisdictional hook. See also United States v. Harrelson, 754 F.2d 1153, 1173 (5th Cir. 1985). In short, there is

suffer death unless the jury qualifies its verdity by adding
thereto "without capital punishment," in which event he
shall be sentenced to imprisonment for life . . .

little question but that  Congress did not enact § 1114 to narrow the range of crimes punishable by death or to segregate from other crimes the murder of a federal officer as warranting the penalty of death.  Congress simply wanted to make the murder of a federal officer a federal crime.  The government's reply does not engage here but rather contends that the motive or purpose of Congress does not matter.

The question is whether Congress narrowed the range of offenses to the reach of Furman.  In other words, results matter and not the reasons for the narrowing.  The role of motivation in passing legislation has been long debated, including the disutility of such a test for legitimacy.  It is a strange argument that imposing the death penalty in this case would be unconstitutional, but would pass muster if without changing the language or effect of § 1114 we found that Congress intended its effect in order to meet the dictates of the Eighth Amendment, at least where here Congress has not acted for any improper motive.  But, it is offered, it is not enough that in the process of making a federal case of one crime and not another the result is to narrow capital crimes to a constitutionally permissible range.  It is not enough because the Eighth Amendment and due process require that Congress select the fit crimes; that Congress must do the weighing.  We are not persuaded.

We find no such insistence of congressional awareness in the due process clause or the Eighth Amendment.  It is true that the Eighth Amendment has been read as reflecting evolving standards of

6

decency and the representative branch's judgment about the currency of a standard is at least relevant. Accepting all of this, it does not argue for a unique defining role of Congress. In any event, we have never recognized it. More to the point, the suggestion begs the question of whether Congress has not in fact narrowed. That is, this argument is simply a contention for inquiring into motivation, recast.

IV

This brings us to the question whether the trial judge can by invention supply the required procedures at the sentencing hearing, indeed supply a sentencing hearing. The government contends that the district court has inherent power to conduct those hearings necessary to meet constitutional requirements such as evidentiary hearings on the admissibility of evidence. We agree that a district judge has inherent power essential to its task. There are, however, many different ways of constructing a constitutionally adequate scheme. The Supreme Court has left states free to proceed in ways that are in practice quite different. There is simply not "any one right way . . . to set up [a] capital sentencing scheme." Spaziano v. Florida, 468 U.S. 447, 464 (1984).

The Federal Kidnapping Act was struck down because it made kidnapping punishable by death only on a plea of not guilty and hence penalized a defendant's right to put the government to its proof. United States v. Jackson, 390 U.S. 570 (1968). The Court in Jackson rejected the effort to save the statute with the

7

argument that a district judge could conduct a sentencing hearing on a plea of guilty by exercise of its inherent power. It pointed out that there are a number of policy decisions not addressed by Congress that would need be made, asking:

> If a special jury were convened to recommend a sentence, how would the penalty hearing proceed? What would each side be required to show? What standard of proof would govern? To what extent would conventional rules of evidence be abrogated? What privileges would the accused enjoy? Congress . . . has addressed itself to none of these questions . . .

Id. at 579. The Court then explained that these choices were for Congress not federal judges acting ad hoc across the country. Id. at 580-81.

> It is one thing to fill a minor gap in a statute . . . It is quite another thing to create from whole cloth a complex and completely novel procedure and to thrust it upon unwilling defendants for the sole purpose of rescuing a statute from a charge of unconstitutionality.

Id. at 580. The choices are for the Congress and it has not acted. We agree with the district court on this point and affirm.

AFFIRMED.