UNITED STATES of America,
Plaintiff–Appellant,

v.

John Fred WOOLARD and Dempsey
A. Bruner, Defendants–Appellees.

No. 92–7006.

United States Court of Appeals,
Fifth Circuit.

May 4, 1993.

Andrew McBride, Alexandria, VA, Jay T. Golden, Asst. U.S. Atty., George Phillips; U.S. Atty., Biloxi, MS, Robert Erickson, Deputy Chief, Crim. Div. Appellate Sec., Dept. of Justice, Washington, DC, for plaintiff-appellant.

John H. Holdridge, Miss. and La. Capital Trial Assistance Proj., New Orleans, LA, James L. Davis, III, Gulfport, MS (Court-appointed), Merrida P. Coxwell, Jr., Jackson, MS (Court-appointed), for Woolard.

Chester D. Nicholson, Gulfport, MS, Dennis Sweet, III, Jackson, MS (Court-appointed), for Bruner.

---

**31.** *See Bienkowski,* 851 F.2d at 1508 n. 6.

## ON SUGGESTION FOR REHEARING EN BANC

(Opinion January 11, 1993, 5 Cir., 1993, 981 F.2d 756)

Before WILLIAMS, HIGGINBOTHAM, and BARKSDALE, Circuit Judges.

PER CURIAM:

Treating the suggestion for rehearing en banc as a petition for panel rehearing, the petition for panel rehearing is DENIED. The judges in regular active service of this Court having been polled at the request of one of said judges and a majority of said judges not having voted in favor of it (Federal Rules of Appellate Procedure and Local Rule 35), the suggestion for Rehearing En Banc is DENIED.

DeMOSS, Circuit Judge, joined by JOLLY, JONES and SMITH, Circuit Judges, dissenting from the Court's denial of en banc review:

I write to indicate why I requested en banc consideration of this case; and to verbalize my disappointment with my colleagues' decision to pass.

The panel opinion relies on and quotes from *United States v. Jackson*, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968) for its underlying theme that courts just don't have some "inherent power" to "construct a sentencing procedure out of whole cloth". Jackson held that the Federal Kidnapping Law was unconstitutional because it permitted the assessment of the death penalty only in cases in which the defendant pleaded not guilty and asked for a trial by jury. The constitutional defect was the severe ambiguity within the text of the statute itself, a situation which does not exist in *Woolard*. Given that the *Jackson* opinion was written some four years before the Supreme Court decision in *Furman v. Georgia*, the questions posed by the court in *Jackson* (and cited by the panel in *Woolard*) regarding "policy decisions" that need to be made by Congress and "not federal judges acting ad hoc across the country" are understandable. But, what an anachronism those questions are today after twenty years of litigation regarding the constitutional validity of the death penalty. Surely after all this litigation and opinion writing, the federal courts can identify what is required for the constitutional assessment of the death penalty and come up with a set of procedures and evidentiary requirements sufficient to meet the basic fundamental requirements of the constitution. Even the panel opinion itself points out, "There is simply not 'any one right way ... to set up [a] capital sentencing scheme.'" citing *Spaziano v. Florida*, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984).

As the panel acknowledged, the most fundamental constitutional requirements for a death penalty scheme are straightforward:

**A. There must be proportionality between a death sentence and the crime involved. Every felony cannot have death as a possible sentence.**

The panel opinion recognizes that the intentional homicide defined in § 1111 is a crime for which death is a lawful punishment.

**B. There must be a special hearing in which the death penalty is assessed, which is separate and apart from the trial determining guilt or innocence.**

This is a procedural requirement that, it seems to me, a federal court would have no difficulty in structuring even if it is not expressly required by statute.

**C. At the separate hearing for sentencing the defendant must be provided a full and fair opportunity to present all mitigating circumstances which might persuade the jury not to assess the death penalty.**

This is the area where the greatest degree of flexibility has been recognized by the Supreme Court in the variety of state statutory provisions that deal with this aspect.

The panel opinion says the basic requirements in subparagraphs "B" and "C" above are the ones where "the choices are

for Congress and it has not acted". My answer is that Congress has already "acted" twice, once in the Anti-hijacking Act of 1974, a section of which has been codified as 49 U.S.C.App. § 1473(c), and again in Pub.Law 100–690 (1988) codified as 21 U.S.C. § 848(e) to (g). Each of these statutory provisions requires the holding of a separate hearing before an individual may be subjected to the death penalty for the crimes referred to therein. The text of 49 U.S.C.App. § 1473(c) was taken almost verbatim from another bill filed in the same Congress and drafted by the Department of Justice which was intended to provide the same sort of hearing procedures for other federal crimes in which then present law stated that the death penalty was an appropriate punishment. These two statutory provisions address with some degree of particularity the various topics and subjects of concern in the panel opinion; and while the Supreme Court has not passed on the constitutionality of either of these provisions, they appear to be the sort of provisions which are at least as comprehensive and as beneficial to the defendant as many of the states' statutes which the Supreme Court has approved.

Consequently, Congress "has spoken" rather fully and comprehensively on the subject of the basic procedural requirements for assessment of the death penalty; and the courts need not "cut from whole cloth" or make up or fabricate any such provisions. All the courts need to do is to make the reasonable assumption that if Congress adopted a set of procedural provisions to guide the imposition of the death penalty as to certain defined crimes, there is no logical or policy reason why similar provisions cannot be applied to other statutorily defined crimes calling for the death penalty.

Obviously, the provisions of 49 U.S.C.App. § 1473(c) speak only to the criminal acts involving air piracy defined in § 1472 of the U.S.Code; and the provisions of 21 U.S.C. § 848(e) to the criminal conduct referred to as "continuing criminal enterprise" therein; and Congress has never passed similar legislation relating to other crimes in which the death penalty is called for. On the other hand, the true legislative policy judgment to be exercised exclusively by Congress is to decide whether or not a particular crime merits the death penalty; and that is exactly what Congress has done historically in a variety of other criminal statutes. Since the Supreme Court decided *Furman v. Georgia,* the United States Congress has not repealed any statutory provision calling for the death penalty and has in fact added two new statutes defining criminal conduct for which the death penalty may be assessed.

Since it was the judiciary in general (and the Supreme Court in particular) that exercised its "inherent power" to declare certain state statutory provisions calling for the assessment of the death penalty as they then existed unenforceable or insufficient; and it has been the judiciary which has approved, on a case by case basis, the variety of procedural and substantive restrictions adopted by the various states to satisfy the constitutional mandates; and it has been the judiciary which has recognized that the constitution does not prohibit the death penalty per se, then what could be wrong with the federal judiciary declaring that, so long as the procedures and provisions contemplated by either 49 U.S.C.App. § 1473(c) or by 21 U.S.C. § 848(c) are used as a guide, the death penalty may be assessed in federal courts for those other crimes where Congress has not repealed the death penalty as a possible punishment.

Recent events amply demonstrate that the world in which we live is full of wild conspiracies involving violence, terrorism, and mayhem. The probability that these criminal acts will have high federal officials as their deliberately chosen targets is escalating steadily. Should such a tragedy occur, the public will be absolutely dumbfounded to learn that our federal criminal law is in such a state of disarray that the perpetrators of such crimes may not be punished with the death penalty. The average citizen will be unable to comprehend how it came to be that some federal crimes can be punished by the death penalty but other federal crimes equally heinous can-

not. This case provides an excellent vehicle for a thorough reconsideration of the predicament that exists regarding the death penalty at the federal level; and en banc consideration would further such reconsideration.

The panel opinion "deep sixes" the controversy basically because of its over reliance on its quotation from *Jackson.* Congress has expressly given the federal courts authority to make rules in criminal cases; and there is nothing inherently different between rule making with respect to death penalty cases as opposed to other criminal cases.

Because the Court has declined even to consider these important issues en banc, I respectfully dissent.