# United States Court of Appeals
## For the First Circuit

No. 00-2088

UNITED STATES OF AMERICA,

Plaintiff, Appellant,

v.

HECTOR OSCAR ACOSTA-MARTINEZ, A/K/A GORDO, AND
JOEL RIVERA-ALEJANDRO,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Salvador E. Casellas, <u>U.S. District Judge</u>]

Before

Lynch, <u>Circuit Judge</u>,
Coffin, <u>Senior Circuit Judge</u>, and
Schwarzer,[*] <u>Senior District Judge</u>.

<u>Robert J. Erickson</u>, <u>Department of Justice</u>, with whom
<u>Guillermo Gil</u>, <u>United States Attorney</u>, was on brief, for

---

[*]   Of the District of Northern California, sitting by
designation.

appellant.

Steven M. Potolsky for appellee Joel Rivera-Alejandro.

William D. Matthewman for appellee Hector Oscar Acosta-Martinez.

Timothy R. Macdonald, with whom Tim Atkeson and Arnold & Porter were on brief, for Amici Curiae Comisión De Derechos Civiles De Puerto Rico, Ciudadanos Contra La Pena De Muerte, and Colegio De Abogados De Puerto Rico.

---

June 5, 2001

---

**LYNCH, Circuit Judge**.  This case raises the question of the applicability of the death penalty to defendants charged with certain federal crimes in the United States Courts in Puerto Rico.

Hector Oscar Acosta Martinez and Joel Rivera Alejandro were indicted for several federal crimes. Count One charged conspiracy to interfere with interstate commerce by extortionate means, in violation of 18 U.S.C. § 1951(a).  Count Two charged using or carrying a firearm in the commission of a crime of violence which results in death under circumstances constituting first degree murder, in violation of 18 U.S.C. § 924(j).  Count Three charged killing a person to retaliate against his family for providing information to law enforcement officers about the commission of a federal offense, in violation of 18 U.S.C. § 1513(a)(1)(B).[1]  Counts Two and Three allege offenses under statutes which authorize the imposition of the death penalty.

---

[1]    In addition Rivera was charged with two more counts of threatening witnesses.  The indictment alleges that defendants kidnapped Jorge Hernández Díaz, a grocer, demanded a ransom from his son of $1 million and warned the family not to go to the police.  When the family contacted the police, the defendants, it is alleged, shot Hernández Díaz to death, then dismembered him with an ax, and disposed of his remains in bags dumped alongside the road.

The government gave notice of its intention to seek the death penalty pursuant to 18 U.S.C. § 3593(a), a provision of the Federal Death Penalty Act of 1994 (FDPA), 18 U.S.C. §§ 3591-3598.

On July 17, 2000, a judge of the U.S. District Court for Puerto Rico struck the death penalty notice and forbade the government from seeking that penalty. The court held the death penalty to be inapplicable in Puerto Rico because Congress had not explicitly extended to Puerto Rico the statute governing the procedures for reaching a death penalty verdict. Further, it held that even if Congress had intended to apply the death penalty to federal defendants who are charged with such crimes in Puerto Rico, it was beyond its power to do so because Congress was obliged to respect the prohibition against the death penalty contained in the Puerto Rico Constitution. The defendants and amici[2] defend the court's order and also argue that there is no jurisdiction in this court to hear the government's appeal. We hold that we have jurisdiction. We now

---

[2] The court acknowledges the assistance provided in the amici curiae brief filed by the Comisión De Derechos Civiles De Puerto Rico, Ciudadanos Contra La Pena De Muerte, and Colegio De Abogados De Puerto Rico.

-4-

reverse the district court order and reinstate the death penalty as a possible sentence should defendants be convicted on the pertinent charges.

## I.

## Appellate Jurisdiction

Absent explicit statutory authority, the United States has no right of appeal in a criminal case. <u>United States</u> v. <u>Scott</u>, 437 U.S. 82, 84-85 (1978); <u>United States</u> v. <u>Patterson</u>, 882 F.2d 595, 597 (1st Cir. 1989). The United States argues that such authority is granted under the Criminal Appeals Act, 18 U.S.C. § 3731, or under the "collateral order" exception to the final judgment rule, 28 U.S.C. § 1291. The government also argues that this case is appropriate for review by way of mandamus. We agree there is appellate jurisdiction.

The Criminal Appeals Act expressly authorizes appeal by the government in certain circumstances, including from:

> a decision, judgment, or order . . . dismissing an indictment or information or granting a new trial after verdict or judgment, as to any one or more counts, except . . . where the double jeopardy clause . . . prohibits further prosecution.

18 U.S.C. § 3731.  The Act's provisions "shall be liberally construed to effectuate its purposes."  Id.  This reflects congressional intent to "remove all statutory barriers to Government appeals and to allow appeals whenever the Constitution would permit."  United States v. Wilson, 420 U.S. 332, 337 (1975).[3]

This court has broadly construed what constitutes a "count" within the meaning of § 3731.  For example, we have entertained a government appeal from an order striking predicate acts from a RICO count of an indictment.  United States v. Levasseur, 846 F.2d 786 (1st Cir. 1988).  The rationale for Levasseur was that the dismissed portion of the count

_____

[3]  The predecessor to § 3731 permitted a government appeal from a decision sustaining a special plea in bar (when the defendant had not been put in jeopardy) and from a decision dismissing an indictment or arresting judgment, where the decision was based on the invalidity or construction of the statute on which the indictment was founded.  Wilson, 420 U.S. at 336.  That language -- "based on the invalidity or construction of the statute" -- would seem to encompass this appeal.  The present statute, § 3731, despite the vagaries of its language, "was intended to broaden the government's appeal rights."  Id.

The parties disagree as to whether there is any double jeopardy risk should the government be required to wait until after a conviction to appeal from the district court's order. We do not reach the question.

established a "discrete basis for the imposition of criminal liability." Id. at 788 (citations omitted). Similarly, the Ninth Circuit held there was appellate jurisdiction under § 3731 to review an order striking forfeiture allegations from a RICO indictment. United States v. Marubeni Am. Corp., 611 F.2d 763, 764-65 (9th Cir. 1980).

Two courts of appeals have interpreted § 3731 to permit a government appeal from a pretrial order, as here, striking the death penalty from an indictment. United States v. Woolard, 981 F.2d 756 (5th Cir. 1993), concluded that an order striking the death penalty "was in every practical way as much of an alteration from the grand jury's charge as the striking of predicate acts" and thus "removed a discrete basis of criminal liability." Id. at 757. In United States v. Cheely, 36 F.3d 1439 (9th Cir. 1994), the Ninth Circuit held there was appellate jurisdiction under § 3731 to review an order striking the death penalty. Id. at 1441.

Review of the district court's order here is authorized by § 3731. By striking a statutorily authorized penalty, the district court effectively dismissed a significant portion of the counts against the defendants -- the type of order

-7-

appealable under Levasseur. The order appealed from has significant consequences for the trial of the case, consequences every bit as important as the consequences from striking a count in an indictment. The order affects not merely the sentence. By prohibiting a capital prosecution and thus rendering inapplicable the FDPA, the district court's order materially altered the conduct of trial. As Cheely noted, a defendant in a capital case is entitled to extra peremptory challenges, Fed. R. Crim. P. 24(b), and to have two attorneys represent him, 18 U.S.C. § 3005 (1988). See 36 F.3d at 1441. The government, in turn, may seek a "death qualified" jury. Id. Sentencing in a capital case is presumptively decided by the jury, 18 U.S.C. § 3593(b), in a bifurcated proceeding. The district court's order here upset those procedures. We think the effect of the order here is sufficiently like the effects from the categories of orders as to which § 3731 permits an appeal that this appeal falls well within the scope of Congress' intent in § 3731. Cf. United States v. Flemmi, 245 F.3d 24, 25 (1st Cir. 2001).

This case would also be within our mandamus jurisdiction, if there were no statutory jurisdiction. This is one of those "rare cases in which the issuance of an order

-8-

presents a question about the limits of judicial power, poses a risk of irreparable harm to the appellant, . . . [and] the order poses an elemental question of judicial authority." Christopher v. Stanley-Bostitch, Inc., 240 F.3d 95, 99-100 (1st Cir. 2001). Mandamus jurisdiction is particularly appropriate where, as here, the issue presented is novel, of great public importance, and likely to recur. In re Justices of Supreme Court of Puerto Rico, 695 F.2d 17, 25 (1st Cir. 1982). This court has exercised mandamus jurisdiction over government appeals from orders which preclude the government from pursuing the sentence it seeks, even orders as to sentences which do not hold the consequences for the conduct of trial that this order does. See Patterson, 882 F.2d at 600. Mandamus will not issue unless the order is palpably erroneous. United States v. Horn, 29 F.3d 754, 769 (1st Cir. 1994). We turn to the merits.

**II.**

Congressional Intent to Apply the Death Penalty to Federal Criminal Prosecutions in Puerto Rico

The district court reasoned that a provision of the Puerto Rican Federal Relations Act, 48 U.S.C. §§ 731-916, adopted in 1950, required the conclusion that the death penalty

-9-

did not apply to Puerto Rico for these federal criminal offenses.  The pertinent language, at section 9 of the Act, provides:

> The statutory laws of the United States not locally inapplicable, except as hereinbefore or hereinafter otherwise provided, shall have the same force and effect in Puerto Rico as in the United States . . . .

48 U.S.C. § 734.  The district court concluded that the death penalty was "locally inapplicable" to Puerto Rico because the Constitution of Puerto Rico provides at Article II, Section 7 that:

> The right to life, liberty, and the enjoyment of property is recognized as a fundamental right of man.  The death penalty shall not exist. . . .

P.R. Const. Art. II, § 7.[4]

The creation of the Commonwealth granted Puerto Rico authority over its own local affairs; however, "Congress

---

[4]    It is unclear whether it was dispositive for the district court that this provision of the Puerto Rico Constitution existed at the time of the enactment of the Puerto Rican Federal Relations Act, or whether, in its opinion, a later amendment to the Puerto Rico Constitution would also render the death penalty inapplicable to federal prosecutions.  The defendants argue for the broader proposition.  Under our analysis the result is the same even if this provision of the Constitution were enacted later.

-10-

maintains similar powers over Puerto Rico as it possesses over the federal states."  United States v. Quinones, 758 F.2d 40, 43 (1st Cir. 1985).  The questions of whether a statute applies to Puerto Rico and the meaning to be given to the phrase "locally inapplicable" are matters of congressional intent.  Puerto Rico v. Shell Co., 302 U.S. 253, 258 (1937).  When determining the applicability of a federal statute to Puerto Rico, courts must construe the language, if plausible, "to effectuate the intent of the lawmakers."  Id.  The parties agree on this proposition. The role of the federal court on this issue is restricted to determining that intent. If Congress has made clear its intent that a federal statute apply to Puerto Rico, then the issue of whether a law is otherwise "locally inapplicable" does not, by definition, arise.

The defendants argue that Congress has not made its intent to apply the federal death penalty to crimes committed in Puerto Rico clear because the FDPA does not explicitly apply to Puerto Rico.  They emphasize that the proposed Constitution of Puerto Rico provided a ban on the death penalty in 1952, at the time Congress approved that Constitution.  See 48 U.S.C. § 731. That Constitution governs the Commonwealth's own courts, as

-11-

state constitutions govern state courts. The approval by Congress of the Puerto Rico Constitution did not express any intent that federal penalties for federal crimes would apply everywhere except Puerto Rico. "The Congressional intent behind the approval of the Puerto Rico Constitution was that the Constitution would operate to organize a local government and its adoption would in no way alter the applicability of United States laws and federal jurisdiction in Puerto Rico." Quinones, 758 F.2d at 43.

The defendants argue that Congress has been silent on the matter and consequently, out of that silence and the strength of Puerto Rico's concerns, we should draw the inference that Congress viewed this as a provision that is "locally inapplicable" to Puerto Rico under § 734. Defendants and amici acknowledge that the default rule for questions under the Puerto Rican Federal Relations Act is that, as a general matter, a federal statute does apply to Puerto Rico pursuant to 48 U.S.C. § 734. See, e.g., Jusino Mercado v. Puerto Rico, 214 F.3d. 34, 41 (1st Cir. 2000) (extending to Puerto Rico the same immunity enjoyed by the states under the Fair Labor Standards Act).

-12-

Congress has instructed[5] the courts to "refrain from inferring that statutes which have limited effect upon the fifty states silently apply with greater force to Puerto Rico."  Id. at 44. Defendants say that this default rule is overcome here because of the strength of the interest expressed by Puerto Rico and the embodiment of anti-death penalty sentiment in the culture of Puerto Rico.  But there is no claim, nor could there be, that this is purely a local Puerto Rican matter in which the United States government has no interest.  The federal interest in punishing violations of federal law is manifest.  We fully accept the strength of Puerto Rico's interest and its moral and cultural sentiment against the death penalty; the legal issue for the court is still one of what Congress intended.

---

[5]  "The purpose of Congress in [the Puerto Rican Federal Relations Act and the acts of Congress authorizing and approving the Puerto Rico Constitution] was to accord to Puerto Rico the degree of autonomy and independence normally associated with States of the Union."  Examining Bd. of Engineers, Architects & Surveyors v. Flores de Otero, 426 US. 572, 594 (1976), cited in Cordova & Simonpietri Ins. Agency Inc. v. Chase Manhattan Bank, 649 F.2d 36, 40 (1st Cir. 1981) (Puerto Rico is to be treated as a state rather than a territory for purposes of the Sherman Antitrust Act).  As said in Camacho v. Autoridad de Telefonos de Puerto Rico, 868 F.2d 482 (1st Cir. 1989), "Congress, with . . . exceptions not material here . . . retained full authority to treat Puerto Rico like a state subsequent to the advent of Commonwealth status."  Id. at 487.

-13-

The district court focused on the language of the FDPA which concerns the procedures to be followed before a sentence of death may be imposed. Those procedures apply only once a defendant has been found guilty of an offense for which a sentence of death is provided. See id. § 3593(a). The death sentence is not mandated; the determination once the prosecutor opts to seek capital punishment is left to the jury. See id. § 3593(b). The FDPA does not of itself provide for the death penalty, but merely provides for the procedures to be followed before such a sentence is reached.

Instead, the source of the penalty, here the death penalty, is in the substantive statutes which define the crimes and their punishments. Those statutes (and the statutory structure) are very clear that Puerto Rico is not exempt from these death penalty provisions. The district court was in error in its focus and so in error in its conclusion. Indeed, the procedural statute does not specify any of the localities to which it applies because it would make no sense for it to do so; that is not the purpose of the statute. The absence of a locational provision in the FDPA does not support the district court's analysis, but refutes it.

-14-

These defendants are charged in Count Two, under 18 U.S.C. § 924(j), with intentional crimes of violence resulting in death by firearm and in Count Three, under 18 U.S.C. § 1513(a)(1)(B), with killing in retaliation for cooperation with the government. Both of these sections punish those crimes with penalties which include the death penalty and both of those crimes and the consequent penalties are explicitly made applicable to Puerto Rico. Count Two, the firearms murder offense, expressly applies to "the Commonwealth of Puerto Rico." See 18 U.S.C. § 921 (governing § 924). The retaliatory killing offense in Count Three applies not only within the United States, but also explicitly has "extraterritorial" reach. See 18 U.S.C. § 1513(d). In addition, the federal criminal code itself applies to the "United States", and the definition of the "United States" for purposes of the crimes in the code includes Puerto Rico. See 18 U.S.C. § 5. Further, both section 924 and 1513 refer to the general federal murder statute, 18 U.S.C. § 1111, which itself applies to Puerto Rico. Id. § 1111(b).

These substantive sections of the criminal statutes express congressional intent that the death penalty apply to federal criminal defendants so charged in Puerto Rico. But

-15-

there are, as well, other indicia of congressional intent to apply the death penalty to Puerto Rico. When Congress chose to create new crimes, enacted at the same time as the FDPA (and to which the procedural provisions of § 3591 also apply), Congress was explicit that those new crimes, which also provided for the death penalty, applied to Puerto Rico. <u>See</u> 18 U.S.C. §§ 2280(e), 2281(d) (violence against maritime navigation and violence against maritime fixed platforms). This again illustrates that Congress expresses its intent to apply the death penalty in the statutes which define the crime and penalty and not in a procedural statute. The district court's reliance on the procedural statute, § 3591, was error.

We thus conclude that Congress intended the death penalty to apply to these federal criminal prosecutions in Puerto Rico. The death penalty is intended to apply to Puerto Rico federal criminal defendants just as it applies to such defendants in the various states. This choice by Congress does not contravene Puerto Rico's decision to bar the death penalty in prosecutions for violations of crimes under the Puerto Rican criminal laws in the Commonwealth courts. The choice simply retains federal power over federal crimes. Congress has said

-16-

that one purpose of the death penalty is to deter the commission of heinous crimes by prospective offenders. Gregg v. Georgia, 428 U.S. 153, 183 (1976); H.R. Rep. No. 103-466, at 35 (1994), 1994 WL 107577. There is no reason to think that Congress did not intend the death penalty to serve this purpose in Puerto Rico as well.

This court has once before held that a provision of the Constitution of Puerto Rico does not trump a federal criminal statute, where Congress intends to apply the statute to Puerto Rico. In Quinones, 758 F.2d at 41-43, this court held that the federal wiretapping statute, which authorizes and controls the use of wiretaps, applies to Puerto Rico despite an express provision in the Constitution of Puerto Rico prohibiting wiretaps, P.R. Const. Art. II, § 10. There, as here, the Constitution of Puerto Rico governs proceedings in the Commonwealth courts; this is true of state constitutions and proceedings in state courts. Accord Camacho, 868 F.2d at 487. Those constitutions do not govern the definitions or the penalties Congress intends for federal crimes. Indeed, Puerto Rico is not alone in its abhorrence of the death penalty. Some twelve states join it in its views. But those state

-17-

constitutions also do not trump federal criminal law when Congress intends otherwise.

Because Congress was clear about its intent to apply the death penalty to these crimes in Puerto Rico, there is no need to resort to default rules of interpretation. Even if the congressional intent were less clear and we applied those default rules, the outcome would be the same, since the default rule presumes the applicability of federal laws to Puerto Rico. There is little reason to think that the federal interest in defining the punishment for federal crimes would have been considered by Congress to be a matter for local veto power.[6]

Constitutional Analysis

---

[6] This court has consistently applied statutes advancing federal interests to Puerto Rico even when Congress has been silent on the matter. See, e.g., Examining Bd., 426 U.S. at 590; TAG/ICIB Servs., Inc. v. Pan Am. Grain Co., 215 F.3d 172, 178 (1st Cir. 2000) (Interstate Commerce Commission Termination Act applies to Puerto Rico); United States v. Lopez Andino, 831 F.2d 1164, 1167 (1st Cir. 1987) (statutory prohibition on conspiracies to deprive citizens of civil rights applies to Puerto Rico); United States v. Tursi, 655 F.2d 26, 27 (1st Cir. 1981) (assuming that Youth Corrections Act applies to Puerto Rico); NLRB v. Sec. Nat'l Life Ins. Co., 494 F.2d 336, 337-338 (1st Cir. 1974) (National Labor Relations Act applies to Puerto Rico).

We turn to the defendants' contention that Congress lacks the power under the Due Process Clause to impose a particular penalty for federal crimes committed in Puerto Rico. The district court adopted this view. Its reasoning, stripped to its essentials, is that, because the residents of Puerto Rico may not vote for President, see Iguartua De La Rosa v. United States, 229 F.3d 80 (1st Cir. 2000), and may not elect representatives to the Congress, they were not represented in the congressional decision to enact statutes which impose the death penalty for federal crimes in Puerto Rico. The imposition of the death penalty on federal defendants in Puerto Rico is thus said to violate the substantive due process rights of the United States citizens who reside in Puerto Rico.

When testing executive action, the Supreme Court has used the "shocking to the conscience" test. See County of Sacramento v. Lewis, 523 U.S. 833, 846-47 (1998). Even assuming such a test can be applied to congressional action otherwise authorized by the Constitution, the test is not met here. This court has consistently enforced a variety of federal statutes which Congress intended to apply to Puerto Rico. See, e.g., Davila-Perez v. Lockheed Martin Corp., 202 F.3d 464, 468 & n.4

-19-

(1st Cir. 2000) (Defense Base Act applies to Puerto Rico); United States v. Rivera Torres, 826 F.2d 151, 155 (1st Cir. 1987) (Clean Water Act applies to Puerto Rico); Caribtow Corp. v. Occupational Safety & Health Review Comm., 493 F.2d 1064, 1065-66 & 1067-68 (1st Cir. 1974) (Occupational Safety and Health Act applies to Puerto Rico); Moreno Rios v. United States, 256 F.2d 68, 71-72 (1st Cir. 1958) (Narcotic Drugs Import and Export Act applies to Puerto Rico). It cannot shock the conscience of the court to apply to Puerto Rico, as intended by Congress, a federal penalty for a federal crime which Congress has applied to the fifty states.

There is no such legal constraint on Congress' ability to impose penalties for federal crimes. There is no disagreement that Congress has the power to apply the federal criminal laws to Puerto Rico. With that power, of necessity, comes the power to set the penalties for violations of those laws. Indeed, it would be anomalous for Congress to grant the people of Puerto Rico American citizenship and then not afford them the protection of the federal criminal laws. The argument made by defendants and amici is a political one, not a legal one.

The order of the district court is <u>reversed</u>; the death penalty notice is <u>reinstated</u>, and the case is <u>remanded</u> to the district court for further proceedings in accordance with this opinion.